OPINION
{¶ 1} Appellant Rhonda Lyons appeals the decision of the Columbiana County Juvenile Court which granted custody of her son, Zachary Exline, to her sister, appellee Tammy Spiva. The issue before us is whether the court had before it sufficient evidence to find that Rhonda is unsuitable to act as custodian of her child. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On June 19, 2000, Rhonda attempted to commit suicide. She took five pain pills and cut her wrists. At that time, she wrote three suicide notes, one each for her son (d.o.b. April 29, 1993), her son's father, and Tammy. The notes opined that Tammy would be a better mother and would take better care of Zachary. On August 29, 2000, Tammy and Rhonda signed a notarized statement declaring that Tammy had temporary custody of Zachary "until I [Rhonda] get back on my feet and am capable of getting him back." It appears that Zachary then lived with his aunt Tammy and her girlfriend Sandra Valentine until approximately July 2001 when he stayed mostly with his mother and her boyfriend. However, he was returned to Tammy in October 2001 after an incident where Rhonda allegedly became violent with Zachary.
 {¶ 3} On December 11, 2001, Tammy filed a complaint for custody and a request for an ex parte temporary custody order. She attached the notarized statement giving her temporary custody. The temporary custody request was sustained. At the December 27, 2001 hearing, Zachary's father, Donald Pullie, advised the court that he had no objection to continuation of the custody order in favor of Tammy. That hearing did not proceed further as Rhonda requested and was granted a continuance for appointment of counsel.
 {¶ 4} The hearing resumed on January 18, 2002, after which an in camera interview of the child took place. Rhonda requested a continuance for the testimony of a witness. After hearing some testimony, the court allowed a continuance, ordering Rhonda to get a psychological evaluation in the meantime. The hearing was continued to March 25, 2002.
 {¶ 5} At the first hearing, Rhonda admitted that she attempted suicide in June 2000 and gave temporary custody of Zachary to her sister. Rhonda disclosed that she was bi-polar or manic-depressant and that she was taking three medications for her condition. (Tr. 15-16). She admitted that she did not begin regular medication or counseling until November or December 2001. (Tr. 18, 73, 109). She conceded that she was semi-homeless for almost a year after her suicide attempt. (Tr. 18-19). It was revealed that she was evicted from an apartment for harboring a fugitive in her closet. (Tr. 20). As for discipline, she testified that she only spanked Zachary. (Tr. 23). She advised that she is now a better person and is much calmer. (Tr. 27).
 {¶ 6} Rhonda's boyfriend testified that she moved in with him a day or so after they started dating; he later changed this to one week. (Tr. 72). He disclosed that Tammy stated that he should always be there when Zachary was visiting Rhonda. (Tr. 69). He testified that he never witnessed Rhonda engage in violent behavior. (Tr. 68).
 {¶ 7} Although Rhonda initially accepted the fact that her sister is a lesbian who has lived with her girlfriend for over five years and gave custody of her son to her sister with knowledge of that relationship, Rhonda now claims that her son is being influenced to believe that heterosexuality is inferior to homosexuality. (Tr. 31). Rhonda's boyfriend, who testified in her defense, seemed to refute this claim. (Tr. 70).
 {¶ 8} At the first hearing, Rhonda testified that she does not believe that her son is harmed when in the house of Tammy and Sandra. (Tr. 35). However, at the continuation of the hearing, Rhonda claimed that Sandra pulled the back of Zachary's shirt when she was mad at him causing the shirt to choke him. (Tr. 111). Tammy rebutted this testimony by explaining that Zachary refused to do his homework, and when Sandra was going to take his toys/privileges away, Zachary spit in her face causing her to grab the front of his shirt ("low on his chest") as she yelled at him. (Tr. 128).
 {¶ 9} Tammy and Rhonda's mother testified for Rhonda. She claimed that Rhonda never hit Zachary except for spanking. (Tr. 80-81). She did admit that Rhonda was rowdy and upset all the time and unable to take care of Zachary before she got help. She also conceded that if Rhonda did not take her medications now, the same issues would probably arise again. (Tr. 86).
 {¶ 10} Sandra Valentine, Tammy's girlfriend for the past six years, testified that when Rhonda lived with her and Tammy, Rhonda used to hit Zachary when she was mad. Sandra stated that Rhonda would not only excessively swat Zachary's backside, she would also backhand him across the face, grab him, and throw him. (Tr. 40). Sandra said that she saw scratches on Zachary's face and neck which were allegedly caused by Rhonda. (Tr. 44). Sandra testified that Rhonda called her at work and told her that she slammed Zachary into a wall and that Rhonda was afraid she was going to hurt her son. (Tr. 43, 45). This is apparently the incident that resulted in Tammy taking Zachary back in October 2001. Sandra also testified that she was called to the police station when Rhonda got in a physical fight with Sandra's then seventeen-year-old daughter. (Tr. 41).
 {¶ 11} Tammy confirmed Rhonda's fight with Sandra's daughter. She also claimed to have witnessed Rhonda grabbing and throwing Zachary onto the couch, kicking his leg so he would fall, and hitting him multiple times in a row. (Tr. 53-55). She also testified about the final October incident where Rhonda is alleged to have thrown Zachary into a wall. Tammy noted that Rhonda is known to black out when she takes medication after being extremely depressed. She stated that since October, she fears for Zachary's safety if he is left alone with Rhonda for extended periods of time. (Tr. 60, 64).
 {¶ 12} Finally, a letter was filed from the psychologist who performed the court-ordered psychological evaluation. He revealed that Rhonda's IQ was in the borderline range. After making some observations about her thought patterns, he concluded that if custody is returned to Rhonda, it should be done with the understanding that she will accept continued monitoring by Children Services and that she will continue in psychiatric and psychological treatment. He also recommended that she should be required to participate in parent education and assistance programs.
 {¶ 13} On January 31, 2002, the court issued an entry after the first merit hearing stating that temporary custody would remain with Tammy pending completion of the continued hearing. The court found that on more than one occasion, Rhonda harmed and/or threatened to harm her child and that she has experienced unstable episodes in the recent past. After the later continued hearing, the court released its final entry on March 28, 2002, wherein it incorporated its January 31 judgment and found that Rhonda was unsuitable to receive custody of Zachary "at this time." The court determined that although Rhonda is more stable than she was in June 2000 when she attempted suicide, she has not been stable long enough for the court to believe that she is suitable. The court awarded custody to Tammy, and Rhonda was given regular visitation with her child.
 {¶ 14} Rhonda filed timely notice of appeal. In September 2002, this court advised that it would dismiss the appeal if no brief was filed by October 1, 2002. Rhonda then filed her brief. However, she failed to attach proof of service and failed to serve a copy of her brief on counsel for appellee. Thus, this court allowed appellee to file a brief before the hearing in February 2003.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 15} Rhonda's sole assignment of error provides:
 {¶ 16} "Whether the trial court abused its discretion in finding the appellant unsuitable to maintain custody of her child, consequently denying the appellant's paramount right to custody of her child."
 {¶ 17} Rhonda claims that the trial court acted arbitrarily when it failed to weigh any evidence in her favor. She asks us to reverse the unsuitability finding on the grounds that it is against the weight of the evidence as it is not supported by competent and credible evidence. She notes that she has a paramount right to custody as she is a suitable parent. She asks why Tammy and the court would allow her visitation if she is truly a threat to Zachary's safety. She also questions why the court would state her life has been stable recently but then refuse to award her custody.
 {¶ 18} A suitable parent does have a paramount right to custody.Reynolds v. Goll (1996), 75 Ohio St.3d 121, 123, citing In re Perales
(1977), 52 Ohio St.2d 89, 97. Thus, in custody disputes between a parent and non-parent which originate in juvenile court under R.C. 2151.23, the trial court must find the parent to be unsuitable before giving custody to the non-parent. Reynolds, 75 Ohio St.3d at 123, citing Perales,52 Ohio St.2d at 98. In making an unsuitability determination, the court must determine if the evidence shows abandonment, contractual relinquishment, total inability to provide care or support, or other unsuitability, i.e. an award of custody would be detrimental to the child. Id. See, also, In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 17.
 {¶ 19} This determination is a factual one to be made by the fact-finder and should not be disturbed if supported by reliable, credible evidence. Reynolds, 75 Ohio St.3d at 124, citing Massito v.Massito (1986), 22 Ohio St.3d 63, 66. The trial court is in the best position to judge credibility. This concept is said to be extremely important in custody cases. Reynolds, 75 Ohio St.3d at 124. Specifically, the Supreme Court has instructed as follows:
 {¶ 20} "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Id., quoting Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 21} Here, the trial court believed the testimony of Tammy and Sandra that Rhonda over-disciplined Zachary. Zachary's father had no objection to Tammy maintaining custody. Rhonda attempted suicide in June 2000 but did not begin stable and consistent treatment until around the time Tammy filed for custody in late 2001. Rhonda wrote notes advising of how Tammy would be a better mother than herself. Rhonda later gave Tammy temporary custody in a signed and notarized writing conceding that she was unable to care for her son. When Tammy retrieved Zachary in October 2001 after the incident which the court found credible, Rhonda did not file for custody or to terminate the prior temporary custody agreement. Her boyfriend, who she moved in with after a few days of dating, admitted that he did not know about her past problems until near the time of this incident.
 {¶ 22} It is not unreasonable for the trial court to find that the short period of claimed stability in housing, medication, and attitude did not outweigh the period of instability. This consistency is important in determining suitability because, even her own witness/mother testified, the same problems will probably arise again if Rhonda discontinues her regimen. As for her complaint that she must not be unsuitable if Tammy has been willing to allow visitation, we note that Tammy testified that there are safeguards such as their mother, Rhonda's boyfriend, and the ability to call Tammy and have her come get Zachary. We also note that the psychologist did not recommend that custody be given to Rhonda. Rather, he advised that if custody were given to Rhonda, then training and monitoring would be necessary. Additionally, the in camera interview provides additional (but undisclosable) content which the trial court could reasonably interpret as supporting its order.
 {¶ 23} In conclusion, there existed competent and reliable evidence for the trial court to determine that awarding custody to Rhonda would be a detriment to Zachary at that time. As such, the court had before it sufficient evidence to support an unsuitability determination. We believe the trial court handled this matter appropriately under the circumstances that existed at the time. Accordingly, we hereby uphold the trial court's decision and overrule this assignment of error.
 {¶ 24} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.