OPINION
{¶ 1} Allan and Terri Godsey appeal from a judgment of the Clark County Probate Court terminating the guardianship of their minor granddaughter, Kyleigh Taylor Godsey.
 {¶ 2} The Godseys advance two assignments of error on appeal. First, they contend the trial court erred in finding "good cause" to terminate the guardianship under R.C. § 2111.46. Second, they argue that the trial court erred in vacating the guardianship under Civ.R. 60(B).
 {¶ 3} The record reflects that Kyleigh was born on May 24, 1995, to Marcus Godsey and Rachel Thompson (now Snyder). At that time, Rachel and Marcus were unmarried high school students. Shortly after Kyleigh's birth, Allen and Terri Godsey, the paternal grandparents, filed an application to be appointed Kyleigh's guardians. The application identified the proposed guardianship as "non-limited" and for an "indefinite" period of time. Marcus and Rachel signed a waiver of notice and consent to the guardianship, and the matter proceeded to a hearing. Thereafter, on September 19, 1995, the trial court appointed Allan and Terri as Kyleigh's guardians. The trial court also filed letters of guardianship, indicating that the Godseys' "guardianship powers, until revoked, are for an [i]ndefinite time period." More than five years later on January 19, 2001, Rachel Snyder filed a motion to terminate the guardianship for "good cause" under R.C. § 2111.46. Additionally, on March 29, 2001, she filed a Civ.R. 60(B) motion to vacate the judgment entry granting the guardianship. The trial court consolidated the motions and held a two-day evidentiary hearing in early August, 2002. After considering the evidence, the trial court filed an August 23, 2002, judgment entry in which it sustained both of Rachel Snyder's motions and terminated the guardianship. Allan and Terri Godsey then filed a timely appeal, advancing the two assignments of error set forth above.
 {¶ 4} Before addressing the merits of the Godseys' arguments, we first must review the trial court's findings of fact. These findings are supported by the transcript of proceedings below and some of them impact our analysis of the legal issues before us. Among other things, the trial court found that Rachel initially released Kyleigh to a representative of the Department of Human Services at the hospital. When the Godseys protested, Rachel picked up Kyleigh and took her home. For approximately two and one-half months, Kyleigh resided with Rachel and her family but also regularly visited the Godsey home. In late July, 1995, Rachel decided to leave her daughter with the Godseys, who obtained guardianship papers.
 {¶ 5} The Godseys then formally applied for appointment as guardians, indicating that a guardianship was necessary for "medical reasons" and was to be "non-limited" for an "indefinite" period of time. Rachel consented to the guardianship but kept the form for about thirty days before signing it on her front porch, at the request, and in the presence, of Terri Godsey. Rachel did not consult a lawyer or appear at the guardianship hearing, where the trial court appointed the Godseys as Kyleigh's guardian. When granting the guardianship, the trial court never made any factual finding that Rachel was an unsuitable parent. Furthermore, Rachel insisted at the recent termination hearing that Terri Godsey used the term "temporary" in their discussions prior to the granting of the guardianship. Rachel testified that she had no intention of the guardianship being permanent or of allowing Kyleigh to be adopted. The Godseys agree that they needed the guardianship for medical insurance reasons but insist their intention was for the guardianship to last until Kyleigh's eighteenth birthday.
 {¶ 6} In any event, after the Godseys were appointed guardians on September 19, 1995, Kyleigh's father, Marcus, served a four-year term in the military. He now works and attends classes at Clark State Community College, while continuing to reside with his parents. He maintains a daily presence in Kyleigh's life and has a good relationship with her. Following Kyleigh's birth, Rachel received her GED and later attended vocational school, becoming a licensed cosmetologist. She married Jason Snyder in October, 2000. Mr. Snyder is employed by a bank as a computer network engineer, earning $47,000 annually. The Snyders have a daughter, born in 2001, and have purchased a four-bedroom home in Fairborn, Ohio. The home has a fenced back yard and is within three blocks of a middle school. Rachel now works at her church's day-care center, earning $7.00 per hour. She is able to take her younger daughter with her to work and would be able to take Kyleigh when school is not in session. Rachel has maintained weekly visitation with Kyleigh since 1995, including some overnight visits.
 {¶ 7} As for the Godseys, Allan and Terri have been married for 26 years. They have resided in their present home for eight years, and it is quite adequate for the family. While Terri works weekdays as a court reporter, Allan, a retired fire investigator, is responsible for Kyleigh's care. When school is in session, he gets Kyleigh up in the morning and drives her to and from school. Terri attends church regularly and participates in a church youth group with Kyleigh. In addition, Kyleigh has participated in space camp for several years, as well as a "Jack and Jill" program. She also has attended College for Kids at Wright State University, and the Godseys have taken her on numerous trips outside Ohio. It is undisputed that Kyleigh is well adjusted and an excellent student. With regard to the guardianship, Terri Godsey testified that she asked Rachel about adopting Kyleigh, both before and after the child's birth, but Rachel was noncommittal. From the outset, Terri and her husband intended to raise Kyleigh as their own daughter.
 {¶ 8} Based on the foregoing facts, the trial court determined that the guardianship at issue was temporary rather than permanent. The trial court also determined that the passage of time had not resulted in the guardianship becoming permanent, given that Rachel had maintained weekly visits with Kyleigh throughout the guardianship and had purchased gifts for the child. In light of its finding that the guardianship was a temporary one, the trial court concluded that Rachel had not forfeited her paramount right to custody of her child. Therefore, absent a finding that Rachel was an unfit parent, the trial court determined that she was entitled to termination of the guardianship, regardless of the fact that the Godseys had provided excellent care for Kyleigh. Finally, the trial court found inadequate evidence to suggest that Rachel was not a fit and suitable parent. As a result, the trial court found "good cause" to terminate the guardianship under R.C. § 2111.46. The trial court also vacated the guardianship under Civ.R. 60(B), finding it no longer equitable for the order of guardianship to have prospective application.
 {¶ 9} In their first assignment of error, the Godseys argue that the trial court erred in finding "good cause" to terminate the guardianship under R.C. § 2111.46.[1] The Godseys acknowledge that in original custody proceedings between a biological parent and a third party, the biological parent must be awarded custody of a minor child if he or she is a suitable parent. In the present case, however, the Godseys argue that the original custody determination occurred in 1995, when they became Kyleigh's guardians. According to the Godseys, the trial court could not terminate this original custody determination absent evidence of some negative change in their circumstances or in the circumstances of Kyleigh, their ward. In other words, the Godseys insist that as long as they remain fit and suitable guardians, the trial court lacks the ability to terminate their guardianship, regardless of Rachel Snyder's current fitness or suitability to be a parent. Conversely, Rachel argues that she was entitled to termination of the guardianship, based on her fitness and suitability to be Kyleigh's parent, without regard to the excellent quality of care that the Godseys continue to provide. As noted above, the trial court essentially adopted Rachel's argument, finding that she was entitled to termination of the guardianship, despite the fact that Kyleigh continues to thrive under the guardianship of the Godseys.
 {¶ 10} In our view, proper resolution of this appeal turns on two key facts. First, the trial court found, and the record persuades us, that the guardianship at issue was a temporary one. Second, the trial court's August 23, 2002, decision indicates, and the Godseys do not seriously dispute, that Rachel Snyder currently is a fit and suitable parent. As we will explain, these two facts are well supported by testimony presented at the August, 2002, evidentiary hearing. Furthermore, in light of these facts, we cannot say that the trial court abused its discretion in finding good cause to terminate the guardianship under R.C. § 2111.46.
 {¶ 11} In reaching the foregoing conclusion, we cannot overemphasize the significance of the trial court's determination that the Godseys' guardianship was temporary. This court long has recognized the principle that in original custody disputes between a parent and a third party, a parent who is suitable has a "paramount" right to custody of a minor child. In re Guardianship of Sanders (1997),118 Ohio App.3d 606, 614. We also have recognized that a parent may relinquish this paramount right to custody. Id. Once the paramount right to custody has been lost, a parent generally cannot regain custody from a non-parent absent evidence that a change of custody is in the best interest of the child, typically due to some adverse change in the custodial environment. Id. at 614-615. However, the overwhelming weight of legal authority in Ohio supports the proposition that a parent's agreement to surrender temporary custody, through a guardianship or otherwise, is not a relinquishment of a parent's right to preferential treatment in a subsequent determination of custody. Id. at 615. In such a case, a parent need not demonstrate an adverse change in the custodial environment. Rather, when only temporary custody has been awarded to a non-parent, a parent typically must establish nothing more than current suitability to be a parent. Id. The foregoing general legal principles are firmly entrenched in Ohio jurisprudence, and they have been recognized in various contexts. See, e.g., In re Termination ofGuardianship of Hendrickson, 152 Ohio App.3d 116, 119-121,2003-Ohio-1220; In re the Matter of Guardianship of Joles (June 30, 2002), Lake App. No. 99-L-087; Gorslene v. Huck (Oct. 24, 2001), Licking App. No. 01CA40, aff'd, In re Hockstock, 98 Ohio St.3d 238,2002-Ohio-7208; In re Hoffman (Dec. 22, 2000), Lake App. No. 99-L-199; Inthe Matter of Borders (Dec. 30, 1999), Champaign App. No. 99CA9; In theMatter of Wilson (April 30, 1999), Miami App. No. 98-CA-19; In reGuardianship of Sanders, supra, at 614-615; Sanford v. Sanford (June 13, 1997), Trumbull App. No. 96-T-5514; In the Matter of Mears (June 21, 1996), Clark App. No. 95 CA 116; In the Matter of Spriggs (April 24, 1990), Scioto App. No. 89-CA-1803; In re Custody of Carpenter (1987),41 Ohio App.3d 182, 183-185.
 {¶ 12} In the present case, the trial court found that Rachel Snyder relinquished only temporary custody to the Godseys when she consented to their guardianship of Kyleigh. In reaching this conclusion, the trial court noted that the Godseys did not request a guardianship for a "definite" duration, such as until Kyleigh's eighteenth birthday. The trial court also noted that its letters of guardianship, which described the guardianship as being for an "indefinite time period," reasonably could be interpreted as granting a temporary guardianship. Cf. In reHoffman, supra, at *3 (suggesting that "given a parent's paramount right to custody, absent clear and convincing evidence to the contrary, `a guardianship that does not denominate its term as being either temporary or permanent, should be presumed to be temporary in nature'"). Finally, as the trial court recognized, a finding that the guardianship was temporary also is consistent with Rachel's testimony and with the fact that Kyleigh's need for medical insurance was the expressed reason for the Godseys' guardianship application.[2] Upon review, we cannot say that the trial court erred in finding that the Godseys' guardianship was temporary.
 {¶ 13} Perhaps a closer question is whether the guardianship, although originally intended to be temporary, became permanent through the passage of time. As we recognized in In re Custody of Carpenter, supra, at 185, a long "interval between a consensual award of `temporary' custody and the parent's attempt to terminate that award might be deemed to surrender, as a result of the passage of time, the parent's right to preferential treatment." In the present case, the trial court recognized this possibility, but rejected such a conclusion, reasoning:
 {¶ 14} "The next question for the Court becomes whether the temporary nature of the placement became a permanent one after a period of five years. The Court uses five years instead of six or seven because of the fact that the mother formally indicated her discontent with the informal visitation arrangement by filing the Motion for visitation on October 2, 2000. In making this determination, the Court finds the situation similar to the adoption issues set forth in R.C. § 3107.07, as to whether a parent's consent to an adoption is necessary. That is, has the mother failed without justifiable cause to communicate and/or to provide for the maintenance and support of the child within the period of one year prior to the filing of her Motion. First, the Court notes the weekly visitations of the mother with the child during the entire period of the guardianship. Second, the Court finds that although no court-ordered support was paid by the mother,[3] the Guardians were in a better financial position than the mother and did not seek support from her but wished to provide for the child themselves and accepted the military child allotment from the father. The child was well taken care of without her support. Also, she presented the child with gifts on birthdays and during the summer visitation periods the past year. [citation omitted]. Thus, the Court concludes that the placement remains temporary in nature." (Doc. #65 at 9-10).
 {¶ 15} Because Rachel Snyder remained involved in Kyleigh's life throughout the guardianship to the extent permitted by the Godseys, we cannot say the trial court erred in finding that the guardianship remained temporary despite the passage of time. On this issue, we are particularly hesitant to find an abuse of discretion by the trial court,[4] given the Godseys' apparent failure to seek reversal on this basis. On appeal, they make no argument that the trial court erred in finding that the temporary guardianship was transformed into a permanent one due to the passage of time. Consequently, we conclude that the guardianship in the present case was intended to be, and remained, temporary in nature.
 {¶ 16} In light of the case law cited above, it follows that Rachel Snyder did not forfeit her paramount right to custody of Kyleigh. Therefore, in determining whether "good cause" existed to terminate the guardianship under R.C. § 2111.46, the trial court properly placed substantial weight on the issue of Rachel's current suitability to serve as Kyleigh's parent. With regard to that issue, the trial court observed that Rachel Snyder has maintained regular employment, has attended church regularly, has been diligent in her visitation with Kyleigh, has been married for nearly two years to a gainfully employed man, has medical insurance available for Kyleigh, and resides in a four-bedroom home that is "more than adequate."
 {¶ 17} Upon review, we find no abuse of discretion in the trial court's determination that "good cause" existed to terminate the guardianship. See In re Termination of Guardianship of Hendrickson,152 Ohio App.3d at 119 (recognizing that "it is within the sound discretion of the trial court to determine whether good cause exists to terminate a guardianship"). The record indicates that the lack of medical insurance for Kyleigh, the expressed concern when the guardianship was granted, is no longer an issue. Furthermore, the record demonstrates beyond legitimate dispute that Rachel Snyder currently is fit and suitable to serve as Kyleigh's parent. Given that she never relinquished her paramount right to custody of Kyleigh, and based on the evidence before it, the trial court acted well within its discretion in finding good cause to terminate the temporary guardianship that it had authorized in 1995.[5] Accordingly, we overrule the Godseys' first assignment of error.
 {¶ 18} Having determined that the trial court did not abuse its discretion in finding good cause to terminate the guardianship under R.C. § 2111.46, we need not address the Godseys' second assignment of error, in which they contend that the trial court erred in vacating the guardianship under Civ.R. 60(B). Regardless of the propriety of the trial court's ruling on the Rule 60(B) motion, its proper finding of good cause to terminate the guardianship under R.C. § 2111.46 is sufficient to support its August 23, 2002, judgment entry. Accordingly, we overrule the Godseys' second assignment of error, as moot.
 {¶ 19} Based on the reasoning and citation of authority set forth above, we hereby affirm the judgment of the Clark County Probate Court.
Judgment affirmed.
GRADY, J., and YOUNG, J., concur.
[1] Section 2111.46 provides that "[w]hen a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause. . . ." The Revised Code does not define the phrase "good cause" in R.C. § 2111.46. Whether "good cause" exists to terminate a guardianship is within the sound discretion of the trial court. In re Termination of Guardianship of Hendrickson,152 Ohio App.3d 116, 119, 2003-Ohio-1220.
[2] Although the guardianship application cited unspecified "medical reasons" as the basis for the guardianship request, the only particular "medial reason" identified at the August, 2002, evidentiary hearing was Kyleigh's need for medical insurance, which Rachel Snyder was unable to provide in 1995.
[3] Parenthetically, we note that the record before us does not reveal the existence of any court order obligating Rachel Snyder to pay support during the term of the Godseys' guardianship.
[4] In In the Matter of Wilson (April 30, 1999), Miami App. No. 98-CA-19, we reasoned that "[w]hen there is a lengthy interval between a grant of temporary custody and the parent's attempt to regain custody, whether that interval is long enough for a court to find a surrender of parental rights is a question of fact." Id. at *14, citing Miller v.Miller (1993), 86 Ohio App.3d 623, 626. We also found that a trial court's resolution of this factual issue is subject to review for an abuse of discretion. Id.
[5] On appeal, the Godseys also argue at length that the trial court's August 23, 2002, decision terminating their guardianship is at odds with its earlier decision in a case captioned, In Re the Guardianship ofHiggins (Oct. 6, 1999), Clark C.P. No. 962070. Given that we are not bound by the trial court's unappealed ruling in the Higgins case, we need not determine whether it conflicts with the trial court's ruling herein.