OPINION
{¶ 1} Appellant, Rose Reeher, appeals from a decision of the Belmont County Common Pleas Court, Juvenile Division granting legal custody of her daughter to her brother and his wife.
 {¶ 2} This case concerns the legal custody of Jennifer Ashley Reeher (d.o.b 01/26/87). Jennifer was born to appellant and Kenneth Reeher. Appellant and Kenneth subsequently divorced and appellant retained custody of Jennifer. Since then, Kenneth has had minimal contact with Jennifer. On February 23, 2000, appellee, the Belmont County Department of Job and Family Services, filed a complaint alleging that Jennifer was a dependent child as defined in R.C. 2151.04(B) because she lacked proper care due to the mental and/or physical condition of appellant, her mother. The complaint alleged verbal and emotional abuse by appellant and stemmed from an argument between appellant and Jennifer, which one of appellant's brothers tape-recorded. All who heard the recording stated it indicated extremely inappropriate language and interaction by appellant with Jennifer. Appellee requested that the court grant either temporary custody or protective supervision to it. An emergency shelter care hearing was held before a magistrate. Appellant stipulated to emergency shelter care and the magistrate ordered Jennifer's placement in appellee's temporary emergency custody. Appellee placed Jennifer with her maternal uncle and aunt, Francis and Patty Hanasky.
 {¶ 3} The court set the case for a hearing and appointed Jennifer a guardian ad litem (GAL). The GAL evaluated Jennifer's case and found the following. Appellant admitted herself to an in-patient treatment center, was released after three days, and was placed on Lithium, Benztropine, and Haloperidol. The GAL reported it was her understanding that appellant was diagnosed as bipolar, obsessive compulsive. (This will later become a disputed issue). The GAL noted that Home Based Therapy Agency had become involved with the family. The GAL recommended counseling for appellant and Jennifer, continued involvement with Home Based Therapy, continued supervision by appellee, and increased contact between appellant and Jennifer.
 {¶ 4} On May 3, 2000, appellant filed a motion for increased visitation stating she had only had two supervised visits with Jennifer since March 29, 2000. She contended that without an adequate number of supervised visits, the mental health professionals involved would not be able to make a proper determination on reunification. It appears the court denied this motion.
 {¶ 5} The magistrate held an adjudicatory hearing on May 15, 2000. Appellant stipulated to the allegations in the complaint. The magistrate found Jennifer was a dependent child and ordered that appellee retain temporary custody of her. The trial court adopted the magistrate's decision. Appellee subsequently filed a case plan, which appellant agreed to and the court approved. The case plan included supervised weekly visitations between appellant and Jennifer, gradually increasing to unsupervised overnight visits, and various counseling goals and case reviews.
 {¶ 6} According to a GAL report, the supervised visits went well; however, after her first overnight visit, Jennifer expressed that she did not want to spend overnight visits with appellant. When time for the next scheduled overnight visit arose, Jennifer refused to go.
 {¶ 7} During the next several months, the court continued the case upon both parties' requests. On January 5, 2001, appellee filed a motion for a six-month extension of temporary custody stating it anticipated reunification between appellant and Jennifer was a possibility but they needed more time to make progress on the case plan. On February 7, 2001, appellee filed a motion to terminate visitation between appellant and Jennifer. Appellee based this motion on counselors' recommendations that visitation be terminated due to Jennifer's reactions to the visits, including self-mutilation, binging on food, a twitching of her eye, and other manifestations of stress and anxiety. However, a doctor whom appellee relied on in making this motion later clarified her statements making clear that supervised visits between appellant and Jennifer were appropriate. That same day appellant filed a motion to establish regular visitation.
 {¶ 8} The magistrate held a hearing on the motions. He granted appellee's motion for a six-month extension of temporary custody and denied appellant's motion to establish regular visitation. The magistrate also granted appellee's motion to terminate visitation in part. The magistrate ordered that visitation occur when: (1) Jennifer wanted a visit and a counselor was there to supervise; and (2) appellant and Jennifer agreed to whatever conditions were required by the counselor. Appellant filed an objection to the magistrate's decision, which the court overruled.
 {¶ 9} Appellee filed an amended case plan with the court on April 30, 2001, which appellant signed and the court approved. This case plan provided that visitation between appellant and Jennifer was to resume when certain conditions were met, including the agreement of all counselors involved.
 {¶ 10} On July 17, 2001, appellee filed a motion to terminate its temporary custody and grant custody to the Hanaskys. Appellee alleged it made reasonable reunification efforts, but appellant and Jennifer had not made significant progress. The magistrate held a hearing and denied the motion ordering that appellee retain temporary custody of Jennifer for another six months. The court adopted the magistrate's decision over appellant's objections.
 {¶ 11} On January 3, 2002, appellee again filed a motion to terminate temporary custody and grant custody to the Hanaskys. In this motion, appellee stated it was at the end of the statutory maximum period of temporary custody (two years). Appellant then filed a motion for supervised visitation. The magistrate held a hearing on the motions on May 8, 2002. In his May 31, 2002 decision, the magistrate granted appellee's motion to terminate custody and granted legal custody of Jennifer to the Hanaskys. He also granted appellant's motion for supervised visitation as follows. Appellant is granted at least monthly visitation with Jennifer at her counselor's office. Jennifer's counselor is to determine the length of the visit. The only other person who may be present is appellant's counselor. The visitation order may be terminated if after serious attempts, there is a therapeutic recommendation to stop the monthly visits. The visitation order may be extended to other forms of visitation if there is a therapeutic recommendation that such extension is appropriate.
 {¶ 12} Appellant filed objections to the magistrate's decision. On July 1, 2002, the court overruled appellant's objections and granted the Hanaskys legal custody of Jennifer. The court found that appellee had made a reasonable effort to reunify appellant and Jennifer. It further ordered that Jennifer remain in counseling. Finally, it ordered visitation according to the magistrate's decision. Appellant filed her timely notice of appeal from this decision on July 19, 2002.
 {¶ 13} Appellant raises two assignments of error. The assigned errors are very similar, thus we shall address them together. They state:
 {¶ 14} "The trial court erred in granting permanent custody to Francis Hanasky and Patty Hanasky through the acts of the Belmont County Children Services Board when the board did not use reasonable case planning and diligent efforts at reunification with the mother, Rose Reeher."
 {¶ 15} "The trial court committed an abused [sic.] of discretion by finding reasonable reunification efforts and in granting appellee's motion for permanent custody to Francis and Patty Hanasky."
 {¶ 16} Appellant bases her argument on applying the factors set out in R.C. 2151.414(E) to this case. R.C. 2151.414 governs hearings upon motions for permanent custody. It provides factors for the court to consider in determining if a child cannot be placed with either parent within a reasonable time or should not be placed with the parents. Appellant makes several arguments regarding how the court did not properly apply these factors to her case. As appellee correctly points out, however, R.C. 2151.414 deals with procedures for the court to follow upon motions for permanent custody.
 {¶ 17} In the present case, neither appellee nor the Hanaskys sought permanent custody of Jennifer. Appellee's motion sought to terminate temporary custody and grant legal custody to a relative. Permanent custody and legal custody are two distinct dispositions. Permanent custody is "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(30). On the other hand, legal custody is "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(19). When a custodian is granted legal custody of a child, the parent still retains residual rights including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support. R.C. 2151.011(B)(45).
 {¶ 18} A motion to terminate temporary custody and grant legal custody to a relative is governed by R.C. 2151.353, R.C. 2151.415, R.C.2151.417, and R.C. 2151.42, which deal with dispositional hearings and modification of dispositions. Thus, many of appellant's arguments are not germane to the issues.
 {¶ 19} Appellee contends we should dismiss appellant's appeal based on her misapplication of the law. But in the interest of justice, we shall address appellant's basic argument while applying the proper law.
 {¶ 20} Appellant states that if we agree with appellee's assertion as to the proper law to apply, then before awarding legal custody to the Hanaskys the court had to make a finding that she was unsuitable. Citing, In re Hockstok (2002), 98 Ohio St.3d 238.
 {¶ 21} R.C. 2151.353 governs the disposition of abused, dependent, and neglected children. In the present case, the court adjudicated Jennifer dependent. Appellant did not dispute this disposition.
 {¶ 22} R.C. 2151.353(A) provides in pertinent part:
 {¶ 23} "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 24} "* * *
 {¶ 25} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child."
 {¶ 26} R.C. 2151.415 governs motions for dispositional orders. R.C. 2151.415(A) provides the various dispositions the court can make for a child who is in the temporary custody of a children's services agency, including a temporary custody extension and an order that the child be placed in the legal custody of a relative. Once the court makes such a disposition, it may modify its order pursuant to R.C. 2151.415(F). "The court, on its own motion or the motion of the agency or person with legal custody of the child, * * * may conduct a hearing with notice to all parties to determine whether any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued. After the hearing and consideration of all the evidence presented, the court, in accordance with the best interest of the child, may modify or terminate any order issued pursuant to this section or issue any dispositional order set forth in divisions (A)(1) to (5) of this section. In rendering a decision under this division, the court shall comply with section 2151.42 of the Revised Code." R.C. 2151.415(F). At such a hearing, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child. R.C. 2151.42(A).
 {¶ 27} The first issue we must determine is: Whether the trial court must make a finding of parental unsuitability before granting legal custody of a dependent child to a relative?
 {¶ 28} Appellant relies on the recent Ohio Supreme Court decision in Hockstok, 98 Ohio St.3d 238, to support her position. The Hockstok
case originated when the mother, Jennifer Gorslene, filed a complaint in the juvenile court to establish her child's paternity. Paternity was established and the court designated Gorslene as the child's residential parent. Soon thereafter, Gorslene's father and stepmother, the Hockstoks, filed a motion to be made parties to the action so they could assert custodial rights to the child. The court granted the Hockstoks' motion and found that it was in the child's best interests to grant temporary custody to them. Gorslene and the Hockstoks subsequently entered into an agreement whereby the Hockstocks assumed temporary custody of the child for six months to give Gorslene time to create a stable living environment for her child. When the six months expired, the parties agreed to extend the period of temporary custody for another six months. Before the expiration of the six-month period, Gorslene filed a motion to terminate the Hockstoks' temporary custody and regain custody of her child. The Hockstoks then filed a motion requesting legal custody of the child. The matter proceeded to a hearing. The court adopted the magistrate's decision applying the best interests test and granting the Hockstoks legal custody of the child. Gorslene failed to appeal this decision.
 {¶ 29} Ten months later, Gorslene filed a motion for the reallocation of parental rights. The magistrate again applied the best interest test in recommending that the Hockstoks retain custody. Gorslene objected arguing the magistrate was first required to determine whether she was a suitable parent. The trial court, in adopting the magistrate's decision, denied Gorslene's motion. Gorslene appealed.
 {¶ 30} The Ohio Supreme Court held that in a child custody case arising from a parentage action between a parent and a nonparent, the trial court must make a parental unsuitability determination on the record before awarding the child's legal custody to a nonparent. Id. at the syllabus. On appeal, the Hockstoks argued that Gorslene failed to appeal the original grant of legal custody to them thereby constructively forfeiting her right to custody, and therefore, the court did not err in applying the best interest test. The court disagreed finding that no evidence existed that Gorslene ever agreed to give the Hockstoks legal custody of her child.
 {¶ 31} In Hockstok, the court reexamined its decision in Masittov. Masitto (1986), 22 Ohio St.3d 63. In Masitto, the natural father agreed to allow the probate court to appoint his child's maternal grandparents as the child's guardians. The father and mother subsequently divorced. The decree of divorce incorporated the probate court's guardianship order. The father later moved for a change in custody. The trial court ruled that based on the child's best interests, the grandparents should retain custody. The trial court never made an unsuitability finding. The Ohio Supreme Court upheld the trial court's finding that an unsuitability determination had been made when the father agreed to the probate court's guardianship order, i.e., he relinquished his right to custody by contractually agreeing to the appointment of the grandparents as his child's legal guardians and reaffirmed this relinquishment through the divorce decree. In discussing Masitto, theHockstok court stated that it was important to note another rationale for the Masitto holding: Relying on the guardianship statute, the court reasoned that the guardianship status of the child could not have existed unless the probate court found that the parents were unsuitable persons to have the custody of the child, or whose interests, in the opinion of the court, would be promoted thereby.
 {¶ 32} In the present case, based on the court's rationale inMasitto, the juvenile court was not required to make a separate unsuitability finding. To find a parent unsuitable the court must find one of the following: (1) the parent abandoned the child; (2) the parent contractually relinquished custody of the child; (3) the parent has become totally incapable of supporting or caring for the child; or (4) an award of custody to the parent would be detrimental to the child. In rePerales (1977), 52 Ohio St.2d 89 at the syllabus.
 {¶ 33} The trial court adjudicated Jennifer a dependent child as defined in R.C. 2151.04(B). This section defines a dependent child as one "[w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian." R.C. 2151.04(B).
 {¶ 34} Thus, if a court determines a child to be dependent because she lacks adequate parental care due to her parent's mental or physical condition, an award of custody to the parent would be detrimental to the child, which is one of the ways to find a parent unsuitable. It follows then that such an adjudication of dependency would implicitly include a finding of parental unsuitability.
 {¶ 35} This case is distinguishable from Hockstok because inHockstok, the child was never adjudicated dependent. In the present case, appellee filed a complaint alleging Jennifer lacked adequate parental care due to appellant's mental condition. The court found this allegation to be true. Additionally, appellant stipulated to the allegations in the complaint and never objected to the adjudication. Thus, appellant conceded that she was not providing Jennifer with adequate care due to her mental condition. Furthermore, the Hockstok
court's discussion in distinguishing Masitto supports the notion that the trial court need not make an explicit parental unsuitability finding in every case where the court grants custody to a nonparent. This case is further distinguishable from Hockstok because this case does not involve a custody action between a parent and a nonparent. In Hockstok, Gorslene filed a motion to regain custody of her child and the Hockstoks filed a motion for legal custody. In the present case, when appellee filed its second motion to terminate temporary custody and grant custody to the Hanaskys, appellant did not file a motion to regain custody of her daughter. Although, she did request that the court return Jennifer to her in her objections to the magistrate's decision. Thus, the court was not faced with a custody dispute between a natural parent and a nonparent, as was the court in Hockstok.
 {¶ 36} Other courts have addressed the same issue. The Fourth District has held that in dependency and neglect cases where temporary custody and permanent custody are granted to a nonparent, the court need not first make a finding of parental unsuitability. In re Gordon (July 25, 1996), 4th Dist. No. 96CA01; In re Johnson (Mar. 29, 1995), 4th Dist. No. 94 CA 2003. In Johnson, the court reasoned that the R.C. 2151 statutory scheme in neglect and dependency cases incorporates the concept that only unsuitable parents should be deprived of their children. And inGordon, the court noted that a court hearing child dependency actions must consider the suitability of the parents to have custody of their child; however, the court need not expressly find the parents to be unsuitable before awarding custody to a children's services agency.
 {¶ 37} In reaching the same outcome, the Tenth District found that the juvenile court properly applied the best interest test when determining whether custody of a neglected and dependent child should be granted to a nonparent. In re Farrow, 10th Dist. No. 01AP-837,2002-Ohio-3237. In Farrow, the mother had custody of her young daughter when the court adjudicated the child dependent and neglected. At the dispositional hearing, the court placed the child under protective supervision and granted temporary custody to the child's father. Both the child's paternal grandparents and maternal great-grandparents filed motions for legal custody. The juvenile court awarded legal custody to the paternal grandparents and the mother appealed alleging the court was first required to find her unsuitable. On appeal, the court, relying on R.C. 2151.417(B) and 2151.42(A), held that the juvenile court properly applied the best interest test in determining the child's custody. R.C.2151.417(B) provides:
 {¶ 38} "If a court issues a dispositional order pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code, the court has continuing jurisdiction over the child as set forth in division (E)(1) of section 2151.353 of the Revised Code. The court may amend a dispositional order in accordance with division (E)(2) of section 2151.353
of the Revised Code at any time upon its own motion or upon the motion of any interested party. The court shall comply with section 2151.42 of the Revised Code in amending any dispositional order pursuant to this division."
 {¶ 39} R.C. 2151.42(A) provides that at any hearing where a court is asked to modify or terminate an order of disposition issued under R.C. 2151.353, 2151.415, or 2151.417, the court, in determining whether to return the child to his/her parents, shall consider whether it is in the child's best interest.
 {¶ 40} The Farrow court held that pursuant to R.C. 2151.417(B), the juvenile court was required to comply with R.C. 2151.42(A) in amending its disposition order. And that pursuant to R.C. 2151.42(A), the court was obligated to consider whether it was in the child's best interest to be returned to her parents.
 {¶ 41} We find the reasoning of both the Fourth and the Tenth Appellate Districts persuasive and hold that the trial court did not err in failing to make an explicit parental unsuitability finding before awarding legal custody of Jennifer to the Hanaskys.
 {¶ 42} Since the trial court implicitly made a parental unsuitability finding when it determined Jennifer to be dependent and properly applied the best interest test when it modified its previous disposition, we must move on to decide whether the trial court abused its discretion in granting custody to the Hanaskys. On appeal, we will not reverse an award of legal custody absent an abuse of discretion. In reNice (2001), 141 Ohio App.3d 445, 455. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. If the court's decision on the child's best interest regarding legal custody is not supported by competent, credible evidence, then it is unreasonable and we may reverse it. Nice, 141 Ohio App.3d at 455. The trial court's standard of review is not clear and convincing evidence, as it is in a permanent custody proceeding, but is merely preponderance of the evidence. Id; R.C.2151.414(B)(1) and (E); R.C. 2151.415(B); Juv.R. 29(E).
 {¶ 43} Considering appellant's arguments, we must determine whether a preponderance of the evidence supports the trial court's decision that granting legal custody to the Hanaskys is in Jennifer's best interests.
 {¶ 44} None of the counselors/psychiatrists/psychologists opined that Jennifer should return to appellant's care at this time. John Leindecker, Jennifer's therapist, testified that Jennifer suffers from chronic post-traumatic stress disorder. (Tr. 168). He testified that at this point in time, Jennifer does not want to visit appellant or be reunified with her. (Tr. 169). Leindecker stated Jennifer has expressed that it is too upsetting to be around appellant because of past physical and emotional abuse. (Tr. 170). He stated that Jennifer is afraid of appellant. (Tr. 206). Leindecker opined that forcing Jennifer to have contact with appellant would be harmful to her. (Tr. 170-71). He also opined that Jennifer should remain in the Hanaskys' custody. (Tr. 174). Tracey Chambers, a psychologist who examined Jennifer, also recommended Jennifer should remain with the Hanaskys. (Tr. 223). Chambers testified that Jennifer's sole source of anxiety is having to see appellant. (Tr. 231).
 {¶ 45} Appellant's own therapist, Stan Gornick, opined that it would not be a good idea to place Jennifer back with appellant. (Tr. 254). Gornick testified appellant was ready to handle supervised visits with Jennifer and possibly joint therapy. (Tr. 240-41, 244). Dr. Robin Muir, a psychologist who examined appellant, testified she diagnosed appellant with personality disorder. (Tr. 261). She opined that appellant was not a physical danger to Jennifer and that, in a controlled setting with qualified therapists, appellant would not pose any other danger to Jennifer. (Tr. 262). Dr. Muir recommended family therapy and supervised visitation between appellant and Jennifer at this time. (Tr. 267).
 {¶ 46} Lisa Case, appellant's and Jennifer's caseworker, testified it was in Jennifer's best interests that the court terminate appellee's temporary custody and give custody to the Hanaskys. (Tr. 295). Finally, Jennifer's GAL, testified she was in agreement with appellee's motion as long as Jennifer maintained that she did not want to be with appellant. (Tr. 327).
 {¶ 47} Given the above testimony, competent, credible evidence supports the court's finding that granting custody to the Hanaskys is in Jennifer's best interest.
 {¶ 48} Appellant argues that appellee failed to make appropriate reunification efforts to make it possible for Jennifer to return home to her care. The trial court found that appellee has made reasonable efforts to promote the reunification plan, secure counseling, and encourage visitation. This finding is also supported by competent, credible evidence. Case testified as to some of the services appellee provided to appellant and Jennifer including Home Based Therapeutic services for both, out patient therapy for Jennifer, and evaluations by a psychiatrist and psychologist. (Tr. 293). Case stated that she has visits with Jennifer at least monthly to update her situation. (Tr. 310). She also testified that in her conversations with Jennifer she discusses how appellant is progressing and encourages Jennifer towards visitation and contact with appellant. (Tr. 304). Case also testified appellee relies on Jennifer's relationship with Leindecker, her therapist. (Tr. 307). Jennifer's GAL testified that appellee has done the best and the most it could do in Jennifer's best interests. (Tr. 327). Additionally, the record contains several case plans which include supervised visitations, therapy sessions for both Jennifer and appellant, reports from counselors, and formal reviews.
 {¶ 49} Appellant also alleges that she was never diagnosed as bipolar and, therefore, the case plan goals relating to her taking her medications and dealing with this disease were impossible. The record does not contain a bipolar diagnosis by a doctor. However, in the GAL's report of March 29, 2000, the GAL stated it was her understanding that appellant had been diagnosed as bipolar, obsessive compulsive. She also stated that following appellant's three-day hospital stay, she was released and placed on Lithium, Benztropine, and Haloperidol. Additionally, in the first case plan filed May 30, 2000, one of the concerns listed is appellant's emotional instability caused by her bipolar disorder, diagnosed by a Dr. Elliot. Appellant signed this case plan thereby agreeing to its terms. At the hearing, the parties did not present any evidence that appellant suffered from bipolar disorder. Appellant testified she was never diagnosed as bipolar. (Tr. 322). Whether appellant suffers from bipolar disorder or not, does not impact the trial court's finding that it is in Jennifer's best interest to remain with the Hanaskys. Given the unanimous opinions that Jennifer should not return to appellant's custody at this time, we cannot say the trial court abused its discretion in awarding Jennifer's legal custody to the Hanaskys.
 {¶ 50} Finally, appellant argues appellee did not provide her with any meaningful visitation. Without visitation, appellant contends, she was unable to resurrect her relationship with Jennifer. The court did not make any findings regarding past visitation or the lack thereof. The court did note that the counselors testified in order for visitation to not be harmful to Jennifer, she would have to be willing to visit appellant. Although appellant contends she has not been afforded much visitation with Jennifer, this does not alter the fact that competent, credible evidence supports the trial court's decision.
 {¶ 51} Based on the testimony at the hearing, the trial court did not abuse its discretion in granting Jennifer's legal custody to the Hanaskys. Accordingly, appellant's assignments of error are without merit.
 {¶ 52} For these reasons, the trial court's decision is hereby affirmed.
Judgment affirmed.
Vukovich and DeGenaro, JJ., concur.