IN RE HOCKSTOK; HOCKSTOK, N.K.A. GORSLENE, APPELLEE, V. HOCKSTOK ET AL., APPELLANTS.

[Cite as *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208.]

*Domestic relations — Children — Custody — In a child custody case arising out of a parentage action between a natural parent of the child and a nonparent, a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent.*

(No. 2001-2134 — Submitted October 16, 2002 at the Licking County Session — Decided December 27, 2002.)

APPEAL from the Court of Appeals for Licking County, No. 01CA40, 2001-Ohio-1680.

_____

SYLLABUS OF THE COURT

In a child custody case arising out of a parentage action between a natural parent of the child and a nonparent, a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent.

_____

MOYER, C.J.

{¶1} Third-party defendants-appellants, Robert and Jeri Hockstok, appeal from the judgment of the Licking County Court of Appeals reversing the trial court's denial of the motion of plaintiff-appellee, Jennifer Gorslene, f.k.a. Hockstok, for an order reallocating parental rights.

I. Facts

**{¶2}** This case originates from a complaint filed on July 15, 1994, by Jennifer Gorslene to establish the paternity of her child, Christopher Michael Hockstok, born on May 28, 1993. The magistrate found Shane R. Huck to be the biological father of Gorslene's child and designated Gorslene to be the child's residential parent.

**{¶3}** Soon thereafter the child's maternal grandparents, Robert Hockstok (Gorslene's father) and Jeri Hockstok (Gorslene's stepmother), filed a motion to be made parties in the instant action in order to assert their custodial rights regarding the child. The Hockstoks' motion was granted, and the Domestic Relations Division of the Licking County Common Pleas Court found sufficient cause to believe that the child may be endangered and that it would be in the best interest of the child to grant temporary custody to the Hockstoks.

**{¶4}** Gorslene and the Hockstoks later entered into an agreement, which was reduced to a judgment entry on April 9, 1996. The parties agreed that the Hockstoks would assume temporary legal custody of the child for a period of six months in order to give Gorslene an opportunity to create a more stable living environment for the child before regaining custody. The judgment entry specified that "the temporary legal care and custody of the minor child, Christopher M. Hockstok, shall be granted to Defendants Robert and Jeri Hockstok for a period of six (6) months from the file-stamped date of this Entry. Upon the expiration of said six (6) months, Christopher M. Hockstok shall be returned to the legal custody of his mother, Plaintiff Jennifer L. Hockstok [now Gorslene]. At that time, the provisions contained in this Entry will also terminate without further action by this Court. If any party believes that the plaintiff's resumption of the minor child's legal care and custody would not be in his best interest, they may petition the court to show cause why the return should not be effectuated."

**{¶5}** The entry listed certain obligations for Gorslene, such as encouraging her then-fiance, Michael Jonas, to attend parenting classes, to seek

2

counseling as a couple, to remedy their financial problems, including the payment of all outstanding bad checks, to maintain health insurance on the child at all times, to obtain and maintain automobile insurance, and to pay child support.

{¶6} When the mandated six-month temporary period expired, the parties agreed that Gorslene was still not in a suitable position to resume custody of her son. Thereafter, the parties entered into another agreement, which was again reduced to a judgment entry, continuing the same terms and conditions of the original. However, the entry did acknowledge that Gorslene had terminated her relationship with Michael Jonas, and ordered that all references to Jonas be deleted.

{¶7} In January 1997, Gorslene filed a motion for contempt claiming that the Hockstoks had failed to abide by the visitation schedule. In addition, Gorslene claimed to have fulfilled the conditions of the previous agreed entries and therefore moved to terminate the temporary custody granted to the Hockstoks. Gorslene's motion to regain custody was denied and the Hockstoks retained temporary custody.

{¶8} The Hockstoks then filed a motion for the court to hold Gorslene in contempt for violation of the previous order to pay child support and a cross-motion requesting legal custody of the child. The matter proceeded to hearing on Gorslene's motion for custody and the Hockstoks' cross-motion for legal custody. The magistrate noted that the court had jurisdiction pursuant to R.C. 2301.03(S) and proceeded to apply the "best interests of the child" test required by R.C. 3109.04(D)(2) in designating the Hockstoks as the legal custodians of the child.[1]

---

1. For purposes of this opinion it is important to differentiate between the statutory definitions of "legal custody" and "permanent custody." "Legal custody" is defined by R.C. 2151.011(B)(19) as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, *all subject to any residual parental rights, privileges, and responsibilities*." (Emphasis added.) "Permanent custody" is defined in R.C. 2151.011(B)(30) as "a legal status that vests in a public

The trial court adopted the magistrate's decision by judgment entry, which was not appealed by Gorslene.

**{¶9}** Approximately ten months later, Gorslene filed a motion for the reallocation of parental rights. Hearings on Gorslene's motion were held and on February 8, 2000, the magistrate filed a decision recommending that Gorslene's motion be denied. The magistrate found that since the Hockstoks had already been granted legal custody as a result of the February 1998 judgment entry, the correct standard to apply in this instance was the best interest of the child as set out in R.C. 3109.04(E)(1)(a).

**{¶10}** Gorslene objected to the magistrate's findings and conclusion and argued that the magistrate had erred by deciding the motion strictly upon the "best interest of the child" standard rather than first ruling on whether Gorslene, as the child's natural parent, was suitable or unsuitable. Over Gorslene's objections, the trial court adopted the best interest of the child as the correct standard.

**{¶11}** Gorslene appealed. The court of appeals reversed and remanded, holding that the trial court erred when it failed to make a parental unsuitability determination. The cause is now before this court upon the allowance of a discretionary appeal.

## II. Summary of Relevant Law

**{¶12}** The issue presented for review is whether, in a child custody case arising out of a parentage action between a natural parent and a nonparent, a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to a nonparent.

**{¶13}** We agree with the Licking County Court of Appeals that "[c]hild custody disputes under Ohio law fall within the coverage of one of two statutes,

---

children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and *divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations.*" (Emphasis added.)

depending upon the circumstances." The two statutes are R.C. 3109.04 and 2151.23.

{¶14} R.C. 3105.011 gives Ohio common pleas domestic relations courts jurisdiction "appropriate to the determination of all domestic relations matters," and R.C. 3109.04 dictates the rules and procedures for domestic relations courts to follow in child custody cases. Specific to the issue before us, R.C. 3109.04(A) applies to "*any* proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child." (Emphasis added.) R.C. 3109.04(D)(2) provides that if a court finds that "it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child * * *."[2]

{¶15} R.C. 2151.23(A)(2) grants the juvenile courts exclusive original jurisdiction "to determine the custody of any child not a ward of another court of this state." The statute, unlike R.C. 3109.04, does not state a test or standard to be used by the juvenile courts in determining child custody cases.

{¶16} Within the framework of the statutes, the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. This interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution; *Santosky*, supra; *In re Shaeffer Children* (1993), 85 Ohio App.3d 683, 689-690, 621 N.E.2d 426. Since parents have constitutional custodial rights, any action by the state that affects this parental right, such as granting custody of a child to a nonparent, must be conducted pursuant to

---

2 Reporter's Note: Footnote 2 has been withdrawn. See 98 Ohio St.3d 1476, 2003-Ohio-980, 784 N.E.2d 709.

procedures that are fundamentally fair. *Santosky v. Kramer*, 455 U.S. at 754, 102 S.Ct. 1388, 71 L.Ed.2d 599; *In re Adoption of Mays* (1986), 30 Ohio App.3d 195, 198, 30 OBR 338, 507 N.E.2d 453.

{¶17} Ohio courts have sought to effectuate the fundamental rights of parents by severely limiting the circumstances under which the state may deny parents the custody of their children. *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, syllabus. Accordingly, we have held that in a child custody proceeding between a parent and nonparent, a court may not award custody to the nonparent "without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child." Id. If a court concludes that any one of these circumstances describes the conduct of a parent, the parent may be adjudged unsuitable, and the state may infringe upon the fundamental parental liberty interest of child custody.

{¶18} Thus, a finding of parental unsuitability has been recognized by this court as a necessary first step in child custody proceedings between a natural parent and nonparent.

{¶19} In *In re Perales*, we held that since the issue of custody in that case did not arise from a divorce proceeding but rather from a dispute between a parent and a nonparent, the juvenile court erred in applying the best interest standard of R.C. 3109.04. Id., 52 Ohio St.2d at 96, 6 O.O.3d 293, 369 N.E.2d 1047. The court noted that R.C. 3109.04 controls custody disputes arising from divorce actions where the dispute is between the child's parents, and where "[b]oth of the parents may be eminently qualified to raise the child" and, therefore, "a finding of unsuitability would not be appropriate and the welfare of the child would be the only consideration before the court." Id. We held that the juvenile court should

have proceeded under R.C. 2151.23(A)(2), and that a juvenile court's "scope of inquiry must, of necessity, be broader in R.C. 2151.23(A) custody proceedings between a parent and a nonparent, which bring into play the right of the parent to rear his own child." *Id.* As R.C. 2151.23(A)(2) grants juvenile courts jurisdiction to determine child custody cases if a child is not a ward of another court of the state and contains no "best interest of the child" standard, we held that a juvenile court must make a determination of parental unsuitability before awarding child custody to a nonparent in a legal custody proceeding. Id. at syllabus.

{¶20} The court revisited the issue of child custody disputes between a natural parent and a nonparent in *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857. In *Masitto,* a natural father agreed to the appointment, by the probate court, of the child's maternal grandparents as guardians for his minor child. The father later agreed to a decree of divorce from the child's mother that made no explicit award of custody but rather incorporated the probate court's guardianship order. When the father later moved for a change of custody, the trial court ruled that, based upon the "best interest of the child" standard of R.C. 3109.04(B), the grandparents should retain custody of the child. The court made no finding with respect to the unsuitability of the father, and in fact, specifically found that he was "a fit person to have custody." Id. at 64, 22 OBR 81, 488 N.E.2d 857.

{¶21} The issue before the *Masitto* court was whether the trial court should have made a parental unsuitability determination before deciding the case based upon the best interest of the child. We cited *Perales,* holding that "[t]he general rule in Ohio regarding original custody awards in disputes between a parent and a non-parent is that 'parents who are "suitable" persons have a "paramount" right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children.' " *Id.* at 65, 22 OBR 81, 488 N.E.2d 857, quoting *In re*

*Perales*, 52 Ohio St.2d at 97, 6 O.O.3d 293, 369 N.E.2d 1047. The *Masitto* court indicated that another general rule in Ohio, which has been codified in R.C. 3109.04(B)(1) and (E)(1)(a), is that once an original custody award has been made, that award will not be modified unless necessary to serve the best interest of the child. Id.

{¶22} We upheld the trial court's finding that an unsuitability determination had been made when the father had agreed to the probate court's guardianship order, i.e., he relinquished his right to custody by contractually agreeing to the appointment of the child's grandparents as legal guardians, and later reaffirmed this relinquishment through the divorce decree. Id. at 66, 22 OBR 81, 488 N.E.2d 857. It is also important to note another rationale for our *Masitto* holding: "An additional factor to consider here is that the guardianship status of the minor child could not have existed unless the probate court found that the 'parents are unsuitable persons to have the custody and tuition of such minor, or whose interests, in the opinion of the court, will be promoted thereby.' " Id., quoting R.C. 2111.06.

{¶23} Thus, since an unsuitability determination had been made in the probate court supported by evidence in the record that the father had contracted away the custody rights of his child, according to *Perales*, such a forfeiture of his right to custody made him unsuitable.

{¶24} The important principle that harmonizes *Perales* and *Masitto* is that regardless of which court had jurisdiction, the juvenile or the domestic relations division of the court of common pleas, this court recognized the overriding importance of a trial court's making a parental unsuitability determination on the record before awarding custody away from a natural parent to a nonparent. These two cases demonstrate the significance of the fundamental rights of natural parents in child custody cases between parents and nonparents.

**{¶25}** For these reasons the position of this court in this area of child custody law ought to be clear. However, some confusion has been created by this court's opinion in *Boyer v. Boyer* (1976), 46 Ohio St.2d 83, 75 O.O.2d 156, 346 N.E.2d 286, which predates *Perales* and *Masitto*. *Boyer* is a child custody dispute between parents and nonparents, but it originated from a divorce proceeding and, therefore, this court applied R.C. 3109.04(D)(2), which allows a court to grant custody of a child to a nonparent relative if the court finds that it is not in the best interest of the child for either parent to retain custody.

**{¶26}** Since *Perales* and *Masitto* did not originate from divorce proceedings and were custody cases involving a parent versus a nonparent, R.C. 3109.04(D)(2) did not apply. It is the circumstances of divorce in *Boyer* that distinguish it from the holdings of *Perales* and *Masitto*. *Boyer* is not controlling here.

### III. Application of the Law

**{¶27}** It is undisputed in the record that the domestic relations court never made a finding that Gorslene was a suitable or unsuitable parent. No such finding was even arguably required when the trial court entered the consent order granting temporary custody to the Hockstoks. The subsequent legal custody award to the Hockstoks was based upon the "best interest of the child" standard required by R.C. 3109.04(D)(2).

**{¶28}** The custody dispute between Gorslene and the Hockstoks originated from a parentage action and it has been established that Gorslene and the child's father were never married. This case shares many facts with *Perales*; however, the case at bar originated under the jurisdiction of the domestic relations court under R.C. 3109.04, while *Perales* originated in the juvenile court under R.C. 2151.23.

**{¶29}** Just as in *Masitto*, the trial court here awarded original custody to the nonparents. However in *Masitto* we observed that the probate court had

9

necessarily found the parent to be unsuitable pursuant to R.C. 2111.06 as a prerequisite to granting the application for custody to nonparents. Gorslene received no such determination before losing legal custody of her child. Therefore, the trial court erred by not giving Gorslene a parental unsuitability determination before awarding custody to the Hockstoks in the legal custody hearing.

{¶30} The Hockstoks acknowledge that the domestic relations court did not make a parental unsuitability determination prior to awarding legal custody to them in the February 4, 1998 order, but argue that this oversight is not determinative. The Hockstoks claim that an unsuitability determination was constructively made when Gorslene failed to appeal the award of legal custody to the Hockstoks. They claim that Gorslene thereby abandoned or contractually relinquished her custodial rights by forfeiting her right to appeal the adverse ruling. We indicated in *Perales* that abandonment and contractual relinquishment are two of the few actions that can justify a determination of parental unsuitability. Id., 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, syllabus.

{¶31} The Hockstoks claim that because there was a constructive unsuitability determination due to Gorslene's failure to appeal the February 4, 1998 entry, the trial court did not err when it applied the "best interest of the child" standard to Gorslene's motion to modify the legal custody order. The Hockstoks rely on R.C. 3109.04(B)(1), which states, "When making the allocation of the parental rights and responsibilities for the care of the children under this section * * * in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children." The Hockstoks urge us to accept their argument that by not appealing the original custody ruling, Gorslene constructively forfeited her right to custody, and, therefore, we should affirm the

common pleas domestic relations court's denial of Gorslene's subsequent motion to modify custody under the best-interest-of-the-child standard.

{¶32} We do not accept this argument. In *Perales,* there was evidence that the natural parent had signed an agreement purporting to give custody of her child to a nonparent. *Perales*, 52 Ohio St.2d at 90, 6 O.O.3d 293, 369 N.E.2d 1047. However, this court found that the domestic relations court had not made an unsuitability determination and that the evidence of forfeiture in the record was not strong enough to warrant substituting its judgment for that of the trial court. Id. at 99, 6 O.O.3d 293, 369 N.E.2d 1047. In *Masitto*, this court concluded that the record did support the finding that the parent had relinquished his right to custody and had been found unsuitable by the trial court. Id., 22 Ohio St.3d at 67, 22 OBR 81, 488 N.E.2d 857.

{¶33} Thus, in both *Perales* and *Masitto*, the unsuitability determination that is required before custody may be awarded to a nonparent over a parent's objections is determined by whether the record supported a finding that the natural parent had relinquished his or her custodial rights. However, in the case at bar, there is no evidence that Gorslene ever agreed to give the Hockstoks legal custody of her child. Gorslene merely entered into an agreement whereby the Hockstoks were given temporary custody of the child, and it is undisputed in the record that this temporary custody was not a grant of legal custody. The record is also undisputed that Gorslene resisted all efforts by the Hockstoks to gain legal custody of the child and had, in an effort to regain custody, actually made progress toward complying with the requirements of the April 9, 1996 agreed judgment entry. The trial court stated that Gorslene had "made great strides since these proceedings were initiated approximately four and a half years earlier" and that "[i]t would further appear from this hearing that [she] basically had complied with the requirements in the agree[d] entries as previously put forth."

**{¶34}** Therefore, the only possible evidence of contractual relinquishment the Hockstoks can argue is constructive forfeiture through Gorslene's lack of appeal regarding the original custody award. We decline to approve the Hockstoks' constructive forfeiture theory.

**{¶35}** The only remaining question to be settled, therefore, is how can a party who did not appeal a final order subsequently petition the court for a modification, when the modification motion raises essentially the same issues that would have been raised during the waived appeal? Unlike most areas of the law where permanency of final orders is a paramount principle, in child custody law, flexibility is often an overriding concern. Such flexibility is codified in R.C. 2151.011(B)(19), which defines the term "legal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child * * * *subject to any residual parental rights, privileges, and responsibilities*." (Emphasis added.) This definition of legal custody is statutory codification of the principle that in child custody, permanency of final orders is not always of the highest priority.

**{¶36}** In this case, it is undisputed that the Hockstoks were awarded legal custody of the child in the February 4, 1998 legal custody entry. This grant of mere legal custody means that Gorslene was never divested of her fundamental parental rights, and she can therefore petition the courts for a custody modification at any time. The fact that Gorslene retains residual parental rights provided by statute, coupled with the fact that she was originally denied a proper parental unsuitability determination, causes us to agree with the judgment of the court of appeals remanding the matter to the trial court to make an unsuitability determination. Such an outcome is consistent with the jurisprudence of this court that in custody cases between a natural parent and nonparent, a parental unsuitability determination must be made and appear in the record before custody

can be awarded to a nonparent. This result preserves the fundamental parental rights that Gorslene never forfeited.

{¶37} During the oral argument in this case, counsel for the Hockstoks argued that a decision requiring the trial court to make a suitability determination now would bring chaos on the child custody system. Counsel raised the specter of an endless line of parents, all having lost custody to a nonparent via a legal custody hearing, petitioning the courts for new suitability determinations. Counsel argued that in the end this situation would merely be detrimental to the child. We agree.

{¶38} Therefore our holding in this case does not change the well-established rule, codified in R.C. 3109.04(B)(1), that after the legal custody determination is made, the best-interest-of-the-child standard should be used for any custody modification petitions filed by a natural parent. A parent should be given only one unsuitability determination, which should come at the time of the legal custody hearing. After such a determination has established, or taken away, a parent's fundamental custodial rights, the focus must shift from the rights of the parents to the rights of the child. A child's rights are effectuated through the use of the best-interest-of-the-child standard for subsequent custodial modification requests.

{¶39} In this way the rights of parents and children are balanced in child custody disputes. In the case at bar, the system was out of balance because Gorslene was never afforded her one unsuitability determination.

{¶40} For the foregoing reasons, the judgment of the court of appeals is affirmed, and the cause is remanded to the domestic relations court for a parental unsuitability determination.

Judgment accordingly.

DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

COOK, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶41} The majority's analysis of legal custody cases between a parent and nonparent is correct. A court should determine the unsuitability of a natural parent before awarding legal custody to a nonparent. In this case, the domestic relations court should have made an unsuitability determination before awarding legal custody to the Hockstoks in its February 4, 1998 order. Gorslene would have the power of the majority's analysis behind her if only she were appealing that order. But she is not. The domestic relations court awarded legal custody to the Hockstoks on February 4, 1998, and Gorslene never appealed. That sets her apart from the parent in *In re Perales* (1977), 52 Ohio St.2d 89, 90, 6 O.O.3d 293, 369 N.E.2d 1047, who was appealing directly from the juvenile court's award of custody to a nonparent based upon "the best interest" of the child. *Perales* remains good law, but it is wholly inapplicable to this case. Since this case concerns Gorslene's attempt to *change*, not appeal, "a prior order of the court making the allocation," R.C. 3109.04 controls. See R.C. 3109.04(B)(1).

{¶42} R.C. 3109.04 is not draconian—it does not foreclose Gorslene from ever having custody of her child again. But it does premise her potential custody on the best interest of the child. R.C. 3109.04(E)(1)(a) states that the court "shall not modify" a prior custody decree unless it finds that "a change has occurred in the circumstances of the child [or his] residential parent, * * * and that the modification is necessary to serve the best interest of the child."

{¶43} Certainly, as part of that "best interest" determination the court should take into account the elemental nature of the parent-child relationship. The majority points out the constitutionally protected fundamental liberty interest parents have in the care of their children. That interest cannot exist without a similar value being accorded to the child's interest in residing with his or her

14

natural parents.  Courts should accord that due weight in making determination of a child's best interest.

**{¶44}**  For the above reasons, I would reinstate the judgment of the trial court.

_____

**Cook, J., dissenting.**

**{¶45}**  I respectfully dissent in accordance with the first two paragraphs of Justice Pfeifer's dissent.

_____

Arnold & Christiansen Co., L.P.A., and Vicky M. Christiansen, for appellants.

James C. Thompson, for appellee.

_____