OPINION.
{¶ 1} The appellant, Phillip Stevens, appeals the April 10, 2003 judgment of the Common Pleas Court, Juvenile Division, of Allen County, Ohio, denying his motion for legal custody of his daughter, Jasmine Osberry.
 {¶ 2} Jasmine was born to Tammy Osberry on December 27, 1997. At the time of her birth, Phillip was aware that he was possibly Jasmine's father, having had intercourse with Tammy near the approximate time of conception. However, Phillip came to believe that he was not Jasmine's father based upon representations from Tammy, and he never sought paternity testing.
 {¶ 3} Jasmine tested positive for cocaine at birth and was removed from her mother's care. She was then placed in the custody of her maternal grandmother, Charlene Jones. However, Charlene eventually gave Jasmine back to Tammy without the court's permission. In July, 2000, Allen County Children's Services Board ("ACCSB") was notified that Tammy and Charlene left Jasmine alone at home with two other young children while they went on a "crack binge." As a result, a complaint was filed alleging Jasmine to be a dependent and neglected child, and she was placed in the temporary custody of Tammy's sister, Dawn Jones. The complaint indicated that Phillip was Jasmine's father but that his whereabouts were unknown. Thus, service was obtained by publication.
 {¶ 4} On August 16, 2000, an adjudicatory hearing was held. Neither parent was present for these proceedings. As a result of this hearing, Jasmine was adjudicated both dependent and neglected on September 18, 2000. Thereafter, a dispositional hearing was held in which neither parent was present. At the conclusion of this hearing, temporary custody of Jasmine was continued with Dawn. However, ACCSB and Dawn both made subsequent motions to the court to modify the status of temporary custody to that of legal custody. This time, personal service, rather than service by publication, of these motions was perfected on Phillip, who appeared and requested court-appointed counsel. A hearing was scheduled on this matter for May 9, 2001. On that date, Phillip and his appointed attorney were present. However, a continuance was requested in order to allow for genetic testing to determine if Phillip was Jasmine's biological father. Therefore, the matter was rescheduled for July 6, 2001.
 {¶ 5} On July 6, 2001, a hearing was held to determine whether legal custody of Jasmine should be granted to Dawn, but neither Phillip nor his attorney was present. At the conclusion of the hearing, legal custody of Jasmine was granted to Dawn. Four months later, on November 6, 2001, Phillip petitioned for, inter alia, legal custody of Jasmine. By this time, genetic testing had been completed, and Phillip was found to be the father of Jasmine. Sometime after this filing, the parties agreed to a visitation schedule for Jasmine and Phillip, Phillip not having previously had any contact with Jasmine. A hearing was later held on the matter on April 24, 2002, and continued on June 12, 2002. The court then took the matter under advisement, and on April 10, 2003, Phillip's petition for legal custody of Jasmine was overruled. This appeal followed, and Phillip now asserts two assignments of error.
The trial court below committed error prejudicial to the appellantfather by applying the wrong standard of review and failing to considerparental unsuitability in a dispute between a parent and non-parent forcustody of a minor child.
 The trial court below committed error prejudicial to the appellantfather finding that the appellant father had abandoned the minor childagainst the manifest weight of the evidence and against the prevailinglaws of the State of Ohio.
As both of these assignments of error pertain to the issue of custody of Jasmine, they will be addressed together.
 {¶ 6} Phillip first maintains that the trial court applied the incorrect standard of "best interest of the child" in overruling his motion for legal custody of Jasmine. Instead, he asserts that the trial court was required to determine by a preponderance of the evidence that he was an unsuitable parent before it could grant legal custody of Jasmine to Dawn Jones over him. Next, Phillip contends that the court could not have made such a determination because a preponderance of the evidence did not demonstrate that he was an unsuitable parent. We disagree.
 {¶ 7} Our review of these assignments of error begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997), 79 Ohio St.3d 46,48, citing In re Murray (1990), 52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes, supra (citations omitted); In re Murray, supra. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'" In re Murray, supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Inre Hayes, supra (citation omitted). In furthering this protection, the Court has stated that "a finding of parental unsuitability has been recognized by this court as a necessary first step in child custody proceedings between a natural parent and nonparent." In re Hockstok,98 Ohio St.3d 238, 2002-Ohio-7208, at ¶ 18.
 {¶ 8} Phillip correctly asserts that a court must first determine parental unsuitability before granting legal custody of a child to a nonparent over the objections of a natural parent. See id.; In rePerales (1977), 52 Ohio St.2d 89, syllabus. In both Perales andHockstok, the Court held that a preponderance of the evidence must demonstrate that "the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child" in order to find parental unsuitability. In re Perales, 52 Ohio St.2d at syllabus. Thus, Phillip maintains that the trial court had to make one of these findings in order to declare him unsuitable prior to denying him custody of Jasmine over Dawn, a nonparent. However, what Phillip fails to acknowledge is that neither Perales nor Hockstok involved children who were previously adjudicated abused, neglected, and/or dependent and whose custody was being determined by R.C. 2151.353. Rather, these cases involved custody determinations pursuant to R.C. 2151.23(A), "which applies to private custody actions between presumptively fit parents and nonparents." In re D.R., 153 Ohio App.3d 156, 2003-Ohio-2852, at ¶ 10.
 {¶ 9} The Perales decision has not been extended to legal custody decisions in cases of abuse, dependency, or neglect. In fact, various courts have held that an adjudication of neglect or dependency implies parental unfitness. Id. at ¶ 15; In the Matter of Farrow, 10th Dist. No. 01AP-837, 2002-Ohio-3237, 2002 WL 1377798; In re Johnson (Mar. 29, 1995), 4th Dist. No. 94 CA 2003, unreported, 1995 WL 146064; see, also,Linger v. Weiss (1979), 57 Ohio St.2d 97, 101, fn. 7 (implying that an adjudication that a child is neglected necessarily encompasses a consideration of parental fitness and the child's best interests). Given the findings necessary to determine that a child is neglected or abused, we agree with those courts that have held that parental unfitness is implied in these cases. Thus, in the case sub judice, the trial court was not required to determine Phillip's parental unsuitability prior to awarding custody to Dawn because Jasmine had previously been adjudicated both neglected and dependent on September 18, 2000, a determination that was not appealed at the time and is not in dispute now. Accordingly, the standard to be applied to such a custody determination is set forth in R.C. 2151.417(B).
 {¶ 10} Revised Code section 2151.417(B) states:
If a court issues a dispositional order pursuant to section 2151.353* * * of the Revised Code, the court has continuing jurisdiction over thechild as set forth in division (E)(1) of section 2151.353 [2151.35.3] ofthe Revised Code. The court may amend a dispositional order in accordancewith division (E)(2) of section 2151.353 [2151.35.3] of the Revised Codeat any time upon its own motion or upon the motion of any interestedparty. The court shall comply with section 2151.42 of the Revised Code inamending any dispositional order pursuant to this division.
As previously mentioned, the court adjudicated Jasmine a neglected and dependent child and awarded temporary custody to Dawn as an order of disposition pursuant to R.C. 2151.353. Both ACCSB and Dawn filed motions seeking to amend that order of disposition from temporary custody to legal custody. Pursuant to R.C. 2151.417(B), the court was required to comply with R.C. 2151.42 in amending its dispositional order.
 {¶ 11} Revised Code section 2151.42(A) requires the court to "consider whether it is in the best interest of the child" to return the child to the child's parents when deciding whether to modify its dispositional orders. On July 6, 2001, the court, finding that it was in Jasmine's best interest to remain with Dawn, converted its grant of temporary custody to one of legal custody, which was not appealed. Rather, four months later, Phillip filed a motion for legal custody of Jasmine and/or to amend the dispositional orders. Thus, the trial court was required to comply with R.C. 2151.42(B), which involves modifications and terminations of orders regarding legal custody.
 {¶ 12} R.C. 2151.42(B) states that "[a]n order of disposition issued under division (A)(3) of section 2151.353 * * * of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature." Thus,
[a] court shall not modify or terminate an order granting legal custodyof a child unless it finds, based on facts that have arisen since theorder was issued or that were unknown to the court at the time, that achange has occurred in the circumstances of the child or the person whowas granted legal custody, and that modification or termination of theorder is necessary to serve the best interest of the child.
R.C. 2151.42(B).
 {¶ 13} The evidence presented during the hearing on Phillip's motion did not reflect a change in circumstances of either Jasmine or Dawn. The only change that occurred was that Phillip now had scientific proof that he was Jasmine's father. This did not constitute a change in circumstances, but rather, a change in conclusive knowledge on Phillip's part that he is the biological father of Jasmine. In addition, the trial court did not find that a change in custody would be in Jasmine's best interest given her limited contact with Phillip, the length of time she had lived with Dawn, as well as with her half-siblings and cousins who were also in Dawn's care, and her young age. Further, the court expressed great concern with granting custody to Phillip because both he and his paramour, Vicki Brown, who was going to be the primary caretaker of Jasmine if she were to come live with them, each had children who were removed from their care by ACCSB. Also, evidence was presented that Vicki was physically violent as recently as October, 2000, to Phillip's young son, who lives with the couple. Based upon the evidence presented to the trial court, we do not find that the trial court erred in granting legal custody of Jasmine to Dawn and in overruling Phillip's motion for legal custody and/or amendment of the prior dispositional order.
 {¶ 14} For these reasons, both assignments of error are overruled and the judgment of the Common Pleas Court, Juvenile Division, of Allen County, Ohio, is affirmed.
Judgment affirmed.
WALTERS and CUPP, JJ., concur.