OPINION
{¶ 1} Damitra Fair, appellant, appeals from the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the trial court granted legal custody of appellant's two minor children to Nikia Gales, appellee.
 {¶ 2} Appellant is the mother of Monica Gales, who was born July 6, 1996, and Alyssa Fair, born November 9, 1997. On August 19, 1999, a complaint was filed with Franklin County Children's Services ("FCCS"), appellee, alleging the children were neglected and dependent pursuant to R.C. 2151.03(A)(2) and 2151.04(C), respectively. On October 13, 1999, an adjudicatory hearing was held before a magistrate. On October 28, 1999, the magistrate filed a decision, dismissing the neglect action but finding the children to be dependent. They were placed under the court-ordered protective supervision of FCCS and temporarily committed to the custody of their great-grandmother Doris Wadlington.
 {¶ 3} On May 17, 2000, an annual review hearing was conducted before a magistrate. The magistrate terminated the temporary court commitment of the children to Wadlington, terminated the court-ordered protective supervision of the children by FCCS, and committed them to the temporary custody of FCCS. On May 26, 2000, the children moved in with Nikia Gales, appellee, Monica's paternal cousin. On August 23 and September 27, 2000, Nikia filed motions seeking legal custody of the children. On August 29, 2000, the magistrate held an interim review and continued temporary court custody with FCCS.
 {¶ 4} On September 1, 2000, appellant filed a motion requesting the children be returned to her custody. On June 14, 18, and 19, 2001, the magistrate held a hearing on appellant's and Nikia's motions. On June 26, 2001, the magistrate dismissed appellant's September 1, 2000 motion and sustained Nikia's September 27, 2000 motion. Temporary court custody of the children to FCCS was terminated and legal custody was awarded to Nikia.
 {¶ 5} On August 15, 2001, appellant filed an objection to the magistrate's decision, requesting that custody of the children be restored to her or, in the alternative, that she be given a new case plan. An oral hearing upon appellant's objection was held before the court November 7, 2001. On November 13, 2001, the trial court issued a judgment modifying the magistrate's decision but adopting the granting of a temporary court commitment of the children to Nikia with court-ordered protective supervision. A six-month review was scheduled and later continued. The review hearing was held February 5, 2002, before a magistrate. On February 15, 2002, the magistrate issued a decision, finding that temporary court custody of the children to Nikia and the order of protective supervision should be extended. The matter was set for review in 160 days.
 {¶ 6} On June 18 and 19, and July 29, 2002, the magistrate reviewed the matter. On September 18, 2002, the magistrate filed a decision, in which she terminated the temporary court custody of the children to Nikia, terminated the court-ordered protective supervision to FCCS, and awarded legal custody of the children to Nikia. Appellant filed a timely objection to the magistrate's decision. On April 15, 2003, the trial court issued a judgment, overruling appellant's objection and adopting the decision of the magistrate granting legal custody of the children to Nikia. Appellant appeals the judgment, asserting the following two assignments of error:
1. The decision and entry of the trial court is clearly is [sic] adverse to the weight of the evidence[.]
2. The decision and entry of the trial court violates the overriding principle in custody cases between a parent and nonparent, that natural parents have a fundamental liberty interest in the care, custody, and management of their children; this interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Due Process Clause of Ohio Constitution.
 {¶ 7} We will address appellant's second assignment of error first. Appellant argues in her second assignment of error that the trial court erred in failing to make a determination as to parental unsuitability before awarding legal custody to Nikia. Appellant asserts that the Ohio Supreme Court in In re Hockstok, 98 Ohio St.3d 238,2002-Ohio-7208, and In re Perales (1977), 52 Ohio St.2d 89, held that, in a child custody case between a natural parent and a nonparent, the trial court must make a parental unsuitability determination on the record before awarding custody to the nonparent. Appellant maintains that, in the present case, the trial court has never made any determination that she is unfit or unsuitable.
 {¶ 8} However, appellant's reliance upon Perales and Hockstok is misplaced. Perales and Hockstok involved private custody matters between presumptively fit parents and nonparents, and were expressly limited to original parentage actions brought under R.C. 2151.23(A)(2). In the present matter, jurisdiction arose from a legal custody proceeding filed under R.C. 2151.23(A)(1) pursuant to a prior dependency determination. Such a proceeding is governed by an entirely different statutory scheme from R.C. 2151.23(A)(2), which governed the legal custody motions at issue in Perales and Hockstok. The children in Perales and Hockstok were never adjudicated dependent. Therefore, the above-cited decisions do not apply to the present case.
 {¶ 9} In the present matter, the juvenile court was not required to make a separate unsuitability finding. Although dependency does not involve fault, an adjudication that a child is dependent necessarily encompasses a consideration of parental fitness. In this case, the trial court found Alyssa and Monica to be dependent based upon R.C. 2151.04(C). R.C. 2151.04(C) defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" One of the ways in which a parent may be found "unsuitable" is when an award of custody to the parent would be detrimental to the child. Perales, supra, at syllabus. Thus, if a court determines a child to be dependent because she lacks an adequate environment, an award of custody to the parent would be detrimental to the child. Accordingly, the trial court need not make a separate finding of parental unsuitability under these circumstances.
 {¶ 10} Several courts, including this one, have similarly distinguished Perales and Hockstok and found that, in dependency and neglect cases, the court need not first make a finding of parental unsuitability to grant custody to a nonparent. See, e.g., In re D.R.,153 Ohio App.3d 156, 2003-Ohio-2852, at ¶ 11; In re Osberry, Allen App. No. 1-03-26, 2003-Ohio-5462; In re Reeher, Belmont App. No. 02-BE-38, 2003-Ohio-3470; In re C.F., Cuyahoga App. No. 82107, 2003-Ohio-3260; In re Farrow, Franklin App. No. 01AP-837, 2002-Ohio-3237; In re Gordon (July 25, 1996), Gallia App. No. 96CA01; andIn re Johnson (Mar. 29, 1995), Ross App. No. 94CA2003. Therefore, the trial court did not err in failing to make a determination as to parental unsuitability before awarding legal custody to Nikia. Appellant's second assignment of error is overruled.
 {¶ 11} Appellant argues in her first assignment of error that the trial court's decision is against the manifest weight of the evidence. When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the findings of the trial court were correct. In re Williams, Franklin App. No. 01AP-867, 2002-Ohio-2902, at ¶ 9. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
 {¶ 12} Pursuant to R.C. 2151.353(A)(3), when a child has been adjudicated dependent, the juvenile court may "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" The decision to grant or deny a motion for legal custody is within the juvenile court's sound discretion. In re Bradford, Franklin App. No. 01AP-1151, 2002-Ohio-4013, at ¶ 29. In Miller v. Miller
(1988), 37 Ohio St.3d 71, 74, the Ohio Supreme Court stated:
* * * The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. * * *
 {¶ 13} Therefore, we will not reverse that decision absent an abuse of discretion. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 14} If a court issues a dispositional order pursuant to R.C.2151.353, 2151.414, or 2151.415, the court has continuing jurisdiction over the child as set forth in R.C. 2151.353(E)(1). The court may amend a dispositional order in accordance with R.C. 2151.353(E)(2) at any time upon its own motion or upon the motion of any interested party. The court must comply with R.C. 2151.42 in amending any dispositional order pursuant to this division. R.C. 2151.42(A) provides:
At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353 [2151.35.3], 2151.415
[2151.41.5], or 2151.417 [2151.41.7] of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child.
 {¶ 15} Thus, the test to be applied in the present case is whether the trial court's order was in the best interests of the children. See Inre Brown (2001), 142 Ohio App.3d 193, 198; Farrow, supra, at ¶ 24;Gordon, supra.
 {¶ 16} Appellant presents no specific argument as to why it would not be in the best interests of the children to have legal custody awarded to Nikia. Our review of the testimony presented at trial reveals that the trial court did not abuse its discretion in awarding legal custody to Nikia. John Gales, appellee, who is Monica's father, testified that he was opposed to returning the children to appellant. He thought Nikia had been taking great care of Monica and Alyssa, and her home was stable. He said Monica was opening up and doing a lot of positive things she had never done before. The girls were now in plays and were more talkative. He was also concerned that appellant was still in contact with Wordell Link, Jr., who Monica accused of sexually and physically abusing her, and who is the father of appellant's 16-month-old son, Wordell Link, III.
 {¶ 17} Marlon Hurd, the caseworker on the children's cases for 16 months prior to the hearing, testified that appellant had not attended any counseling sessions pursuant to her case plan. She also only completed five or six of the 18 to 20 random urine screenings given to her. He said he considered any missed screenings as a positive test. He stated that Nikia's housing was appropriate and he had no concerns about the level of care that was being provided for the children. He opined the children were in a safe, nurturing environment at Nikia's house. Hurd also stated that appellant has given no financial support to FCCS and very little to Nikia to help her children. FCCS has given some support to Gales through one food voucher and two clothing vouchers, as well as payments for babysitting, but she has not asked for any other aid. Hurd stated that a stay-away order had been put in place against Link because FCCS found physical abuse indicated regarding Monica, although it found the sexual abuse claims unsubstantiated. Hurd believed it was in the best interests for Nikia to have custody of the children.
 {¶ 18} However, Hurd also stated that appellant's housing was appropriate. Appellant had also completed all of her parenting classes in the case plan. He testified that he saw no evidence that appellant was living with Link. Hurd also said the children seemed to be bonded to appellant, although they sometimes seemed distracted.
 {¶ 19} Appellant testified at the hearing that she had never turned down any visits, and the only visits she missed were when a cab did not pick her up and when Hurd was ill. She said she had not gone to counseling because Hurd told her that the counselor would contact her, but she was never contacted. She said that if the children came to live with her, they could continue to do the same activities in school, and Nikia could still see them. Appellant testified that she does not take any illegal drugs and took as many of the drug screenings as she could. She also said she gets assistance from her mother, her grandmother, and her son's grandmother, and they would be available to help her with the children. However, she admitted she had not given any money to Nikia to help her support the children. When asked, she did not know Monica's teacher's name, and she was not certain about which school she attended. Further, she admitted she had not attended any school programs. She also had never talked to Nikia about Alyssa's learning problem and attributed the difficulties to stubbornness. Appellant also testified that she did not believe Monica's claim that Link sexually and physically abused her. Appellant believed that something happened but that Link was not involved. She sees Link approximately three to five times per week when he visits their son. She admitted that Nikia does a good job taking care of her children. Appellant also testified that she has seen progress with the girls since they have been with Nikia.
 {¶ 20} Link testified at the hearing that appellant takes good care of his son. He said nobody ever talked to him about abusing Monica. He also testified that he wanted to date appellant, but he was told they could not date because it would affect appellant's efforts to regain custody of the children. He said he did not live with appellant.
 {¶ 21} Christy Evans, Link's mother, testified that appellant takes good care of her grandson. She saw no reason why appellant should not have custody of Alyssa and Monica.
 {¶ 22} Nikia, who is 24 years old, testified that, when the girls came to live with her, they were malnourished, with one weighing 16 pounds and the other weighing 19 pounds, and Alyssa had no hair on the left side of her head. Alyssa also had something wrong with her right knee, causing her to limp. Further, the girls were still wearing diapers and drinking out of training cups when they were placed with her, despite being nearly three and four years old. She said Alyssa has learning problems, and her learning skills were not improving. She also noticed that the girls were touching themselves inappropriately, and she tried to correct their behavior in that respect. Nikia said that, when the girls first came to live with her, she requested one food voucher and two clothing vouchers because they had no extra clothes. Nikia further testified that appellant once gave her $20 toward a camp for Monica that cost $80. Appellant also gave Alyssa and Monica each $2 on Alyssa's birthday. Nikia also noticed that, after visitations with appellant, the children's behavior often worsened. The girls lashed out at each other after being with appellant. Appellant called her house only a few times per month to speak to the children. She also testified that she believed appellant was still living with Link.
 {¶ 23} Nikia said the girls have adapted well to living with her. They were talking more, doing more things by themselves, and doing a lot better in the three years they were under her care. Nikia also testified that she has bonded with the children, and she treats them as if they were her own children. She said her parents also treat the girls as if they were her natural children. She stated that she wanted custody. Monica also once told her that she did not want to live with appellant. Nikia believed that any change in custody of the girls at this point would only hurt them. She thought she had stabilized the girls' lives.
 {¶ 24} Based upon the above testimony, we cannot find the trial court abused its discretion in granting legal custody to Nikia. Appellant's financial assistance to the children for the three years they have been in Nikia's custody has been almost nonexistent. Appellant failed to attend any counseling sessions prior to the hearing and completed less than half of the random urine screenings. Appellant called her children at Nikia's only a few times per month. Further, we agree with the trial court's view that appellant's testimony was troubling in that she did not seem to have a true concern for Monica's abuse. Monica's claim of physical abuse was substantiated; yet, appellant continued to have frequent contact with Link despite the accusations. John Gales was also concerned about appellant's on-going relationship with Link.
 {¶ 25} In addition, the testimony demonstrated that the children are well adjusted to Nikia, and have become more outgoing and independent since staying with her. The children's behavior worsened after visits with appellant. When the girls first came to Nikia's house, they were malnourished and in poor condition physically and mentally. Nikia believed that any change in custody of the girls would only hurt them at this point. John Gales was opposed to returning the children to appellant and thought Nikia had been taking great care of them. Hurd also believed it was in the best interests of the children for Nikia to obtain legal custody. For these reasons, pursuant to R.C. 2151.353(A)(3), we find the trial court did not abuse its discretion in finding it would be in the best interests of Monica and Alyssa for Nikia to be granted legal custody. Therefore, the trial court did not err, and appellant's first assignment of error is overruled.
 {¶ 26} Accordingly, appellant's two assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
LAZARUS and KLATT, JJ., concur.