DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common Pleas, Juvenile Division that granted appellee's motion to modify custody and named her residential parent and legal custodian of her son, Quinten L.B. II. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellant sets forth two assignments of error:
 {¶ 3} "Assignment of Error No. 1 *Page 2 
 {¶ 4} "The trial court erred in its finding that Appellee had not contractually relinquished fundamental parental rights voluntarily and thus erred in applying the principle that a parent has a paramount right to custody against a nonparent and failing to require that a change in circumstances in the child or residential parent has occurred.
 {¶ 5} "Assignment of Error No. 2
 {¶ 6} "The trial court erred in finding it to be in the best interest of Quinten [B.], II to be in the custody of his mother and Appellee herein, Brandy [B.]."
 {¶ 7} The undisputed facts relevant to the issues raised on appeal are as follows. Quinten L.B. II ["Quinten"] was born in November 2001, to Brandy B., then 17 years old, and Quinten B., then 19 years old. Mother and Father married three months after Quinten was born but are now divorced. The record reflects that Mother continued to attend high school after Quinten was born. However, five months after her son's birth, she became pregnant again. Mother experienced health problems during the pregnancy and asked her mother-in-law, appellant herein, if she and her husband would help with Quinten until the baby was born and mother graduated from high school. Appellant agreed to have Quinten live with her and her husband. In March 2003, appellant filed a complaint for custody so that she could obtain medical insurance for Quinten. The day after the complaint was filed, Mother and Father signed a consent judgment entry naming appellant as Quinten's residential parent and legal custodian and giving both parents visitation rights. There was no hearing on the matter. *Page 3 
 {¶ 8} Mother exercised regular visitation with Quinten. She graduated from high school, obtained a job which she has held for five years, and began to work on an associate's degree in business management. On June 15, 2007, Mother filed a motion to modify custody. Father was duly notified, but failed to appear at the hearing on the motion.
 {¶ 9} In its judgment entry journalized January 4, 2008, the trial court found that it was in Quinten's best interest to be in his mother's custody and ordered that she be deemed residential parent and legal custodian effective January 13, 2008.
 {¶ 10} In her first assignment of error, appellant asserts that Mother contractually relinquished her parental rights in 2003. In support, appellant points to the following language in the consent to custody order signed by both parents on March 6, 2003: "* * * the undersigned parents of the minor child * * * hereby voluntarily of our own free will and accord, consent to the Court entering a custody Order, placing said child in the legal care and custody of the Petitioner." Appellant argues that the language on its face shows the parents' intent to relinquish their parental rights. We disagree.
 {¶ 11} Mother testified that she and Father originally asked appellant to help them with Quinten in 2002, until Mother's pregnancy was over and she graduated from high school. Quinten was four months old at that time. Mother stated that she considered the situation to be temporary. She further testified that she was told that when her second child was born and she was finished with school, appellant would "give the baby back." *Page 4 
Both parties testified that the paperwork to change custody was executed in 2003, in order to allow Quinten to be covered by appellant's health insurance plan while he lived with her.
 {¶ 12} Appellant testified that the original oral agreement, made in early 2002 when Quinten was only a few months old, was that she would care for the child for one year until Mother and Father "got back on their feet." As time passed, "things just happened" and Quinten remained with her. She further testified that when the custody agreement was signed in March 2003, it was her intent to raise Quinten until he was emancipated.
 {¶ 13} There is nothing in the testimony provided by either party or elsewhere in the record that would support a finding that Mother contractually relinquished her parental rights. The testimony given by both parties indicates that the paperwork was executed so that appellant could have Quinten covered under her medical insurance, after it became clear that Quinten had a few health issues that required attention. The entry by which appellant claims Mother relinquished her parental rights did nothing more than make appellant "legal custodian." The granting of"mere legal custody" does not divest a parent of his or her fundamentalparental rights, privileges and responsibilities, and a parent can therefore petition the trial court for a custody modification at any time. (Emphasis added.) See In re Hockstok (2002), 98 Ohio St.3d 238,2002-Ohio-7208, and In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191. In both Hockstok and C.R., the Ohio *Page 5 
Supreme Court noted that it is important to differentiate between the statutory definitions of legal custody and permanent custody. We agree. "Legal custody" is defined by R.C. 2151.011(B)(19) as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where the child shall live and the right and duty to protect, train and discipline a child and to provide the child with food, shelter, education and medical care, all subject toresidual parental rights, privileges and responsibilities." (Emphasis added.) R.C. 2151.011(B)(30) defines permanent custody as a legal status which "* * * divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations."
 {¶ 14} Appellant correctly states that in examining a written instrument, the purpose is to give effect to the intent of the parties. However, appellant then leaps to the conclusion that it was Mother's intent to relinquish her parental rights, despite Mother's clear testimony to the contrary. There is simply no language in the consent entry regarding relinquishment of parental rights or a grant of permanent custody as defined in R.C. 2151.011(B)(30). Further, Mother testified that she and the baby's father agreed to sign the consent entry solely so that Quinten would be eligible for health insurance under appellant's policy.
 {¶ 15} Based on the foregoing, we find that there is no evidence in the record that Mother contractually relinquished her parental rights when she signed the consent entry in 2003. There is every indication that Mother and Father intended for appellant to be *Page 6 
given legal custody of Quinten on a temporary basis, not permanent custody. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 16} In her second assignment of error, appellant asserts that it would be in Quinten's best interest for custody to remain with appellant. In support, appellant cites the testimony presented at the hearing as well as the recommendation of Quinten's guardian ad litem that the child remain in his grandmother's custody.
 {¶ 17} It is the general rule in Ohio that once an original custody award has been ordered, that award will not be modified unless necessary to serve the best interest of the child. See Masitto v. Masitto (1986),22 Ohio St.3d 63; Hockstok, supra, ¶ 21, 38.
 {¶ 18} Appellant notes that there was little evidence or testimony presented in this case that specifically related to Quinten's best interest. The record supports this conclusion. The trial court found, based on the testimony, that Quinten has a good relationship with all parties involved, that both parties have cooperated in visitation and that neither of the parties intends to relocate outside of Ohio. The court also noted that appellant's adult stepson is currently living in her home and that the stepson has a history of legal problems associated with alcohol abuse. Mother testified that she has had the same employment for five years and was close to completing an associate's degree in business management at the time of the hearing. She further testified that Quinten gets along well with his two siblings. *Page 7 
 {¶ 19} Upon our review of the testimony, we note that the guardian ad litem recommended that Quinten remain in appellant's custody, although in doing so she articulated no unfavorable observations as to Mother's situation or ability to parent her son. The guardian noted that Mother has no mental or physical limitations that would affect her ability to parent Quinten. The sole reasons given in support of her recommendation were the fact that Quinten has lived with his grandmother since he was four months old and her belief that removing Quinten from the kindergarten class he had attended for approximately six weeks would be detrimental.
 {¶ 20} This court has thoroughly reviewed the record of proceedings in this case and the applicable law. Based on the foregoing, we find that the trial court's order allocating parental rights and responsibilities of Quinten to Brandy B., his mother, subject to liberal visitation with appellant, is in the child's best interest. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 21} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
 JUDGMENT AFFIRMED. *Page 8 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1